[Civ. No. 646.   Fifth Dist.   Jan. 30, 1967.]

SILVER LAND AND DEVELOPMENT COMPANY, Plaintiff and Appellant, v. CALIFORNIA LAND TITLE COMPANY et al., Defendants and Respondents.

William Steinberg for Plaintiff and Appellant.

Bagley, Bernt, Bianchi & Sheeks and C. John Bernt for Defendants and Respondents.

CONLEY, P. J.—Once again, the temptation to cut the Gordian knot of involved litigation by resort to a summary judgment has proven erroneous. Silver Land and Development Company, the plaintiff in a quiet title action, appeals from the court's determination of the motion of two specifically named defendants, California Land Title Company and Marin Title Guaranty Co., for a summary judgment resulting in the dismissal of the complaint as against them. Because of the complexity of the facts and perhaps the obfuscation caused by some of the declarations filed by the two sides, the court apparently lost sight of the principle that the purpose of the summary judgment procedure is not to provide a short cut to decide the merits of the case, but to determine whether there are factual issues involved in the litigation.

A summary judgment is drastic in nature and it should be resorted to sparingly and with great caution. (*Eagle Oil & Ref. Co.* v. *Prentice,* 19 Cal.2d 553, 556 [122 P.2d 264]; *Albermont Petroleum, Ltd.* v. *Cunningham,* 186 Cal.App.2d 84 [9 Cal.Rptr. 405]; *Kimber* v. *Jones,* 122 Cal. App.2d 914, 919 [265 P.2d 922]; *Fidelity Investors, Inc.* v. *Better Bathrooms, Inc.,* 146 Cal.App.2d Supp. 896 [304 P.2d 283].) This court has even said in *Johnson* v. *Banducci,* 212 Cal.App.2d 254, at page 261[27 Cal.Rptr. 764]: "If, after an examination of the affidavits, doubt exists as to whether summary judgment should be granted, such doubt should be resolved against the moving party." (Citing *Whaley* v. *Fowler,* 152 Cal.App.2d 379, 381 [313 P.2d 97]; *House* v. *Lala,* 180 Cal.App.2d 412, 415 [4 Cal.Rptr. 366]; *Travelers Indemnity Co.* v. *McIntosh,* 112 Cal.App.2d 177, 182 [245 P.2d 1065].)

In *Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785], the proper attitude of the trial court toward an application for summary judgment is thus stated: "The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the

motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts. (*Desny* v. *Wilder* (1956) 46 Cal.2d 715, 725-726 [299 P.2d 257]; *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 260-261 [223 P.2d 244]; *Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264]; *Snider* v. *Snider* (1962) 200 Cal.App.2d 741, 747-749 [19 Cal.Rptr. 709]; Code Civ. Proc., § 437c.) Thus, the trial court is justified in granting the motion here only if the declarations filed in support of it, strictly construed, contain facts sufficient to entitle the defendants to judgment, and those of the plaintiffs, liberally construed, show that there was no issue of fact to be tried.''

The inquiry which a trial judge must make below is not which side is entitled to prevail on the merits, but whether there is an issue of fact which should be determined in the ordinary way in an ordinary trial. The rule is thus laid down in *Walsh* v. *Walsh*, 18 Cal.2d 439, 441-442 [116 P.2d 62]: ''. . . in passing upon a motion for summary judgment, the primary duty of the trial court is to decide whether there is an issue of fact to be tried. If it finds one, it is then powerless to proceed further, but must allow such issue to be tried by a jury unless a jury trial is waived. By an unbroken line of decision in this state since the date of the original enactment of section 437c, [Code Civ. Proc.] the principle has become well established that issue finding rather than issue determination is the pivot upon which the summary judgment law turns. [Citations.] As was said in *Shea* v. *Leonis, supra*, at p. 187 [29 Cal.App.2d 184, 187 (84 P.2d 277)]: 'A motion for summary judgment is not a trial upon the merits. It is merely to determine whether there is an issue to be tried.' The same thought was expressed in *Bank of America* v. *Casady, supra*, at p. 168 [15 Cal.App.2d 163, 168 (59 P.2d 444)]: 'If an issue of fact is raised, then a summary judgment is improper, and the case must proceed to trial.' ''

■ If, on appeal, it appears that some factual issue exists which has been overlooked or disregarded by the trial court, it is the duty of an appellate court to reverse the summary judgment. (*Vallejo* v. *Montebello Sewer Co., Inc.*, 209 Cal. App.2d 721, 731 [26 Cal.Rptr. 447]; *People* ex rel. *Mosk* v. *City of Santa Barbara*, 192 Cal.App.2d 342, 350 [13 Cal.Rptr. 423].)

It is essential, in order for us to appraise the situation justly, to examine the pleadings to determine the issues, keeping in mind, however, that the affidavits filed by the contending parties must constitute the ultimate test of the propriety of the lower court's action.

■ A complaint to quiet title was filed by Silver Land and Development Company, a California corporation, on November 26, 1965. Two defendants, the respondents herein, were specifically named—California Land Title Company, a California corporation, and Marin Title Guaranty Co., a California corporation; in addition, there were numerous fictitious defendants—Black Company, a corporation, White Company, a copartnership, Does One through Twenty, and ''all persons unknown claiming any right, title, estate, lien or interest in the real property described in the complaint adverse to the plaintiff's ownership, or any cloud on plaintiff's title thereto.'' Until the judgment herein, only the two specifically named parties had been served, but the conclusion is inescapable from the record that at least six other persons jointly claim title to the land involved; that they are known by name to plaintiff's counsel; and that ultimately they must be brought in as defendants in order that title to the real property involved may be legally ascertained.

The complaint alleges that plaintiff and the two defendant corporations were duly organized and existing under the laws of the State of California; ''that the plaintiff is the owner and seized in fee simple of all that certain real property situate in the County of Trinity,'' described in Exhibit ''A''; the described land known as Valdor consists of extensive parcels, including mining claims, the description of which occupies more than four pages in the clerk's transcript.

The complaint continues as follows: ''That the plaintiff is by itself, in the actual, exclusive and adverse possession of the whole of the said real property and of each and every parcel and part thereof, and by itself and its predecessors in interest has been in the actual, exclusive and adverse possession of the

whole of the said real property, and of each and every parcel and part thereof, continuously for twenty years prior to the filing of this Complaint, claiming during all of the said period to own the said real property in fee against the whole world, and during the period of five years continuously next preceding the filing of this Complaint, has, by itself, and its predecessors in interest paid all taxes of every kind levied or assessed against the said real property, or any part thereof, and which were payable during the period of five years continuously next preceding the filing of this complaint.''

The complaint then alleges that each of the defendants claims ''some right, title, estate, lien or interest in said real property adverse to plaintiff's ownership, which said claim or claims constitute a cloud upon plaintiff's title thereto.'' The initial pleading avers that such claims are without right and void and prays that the rights and interests of defendants be adjudged to be of no effect and that plaintiff's title to the whole of said property be quieted against all of the defendants. The complaint is verified by the president of the plaintiff.

The California Land Title Company and the Marin Title Guaranty Co. filed an answer which contains numerous affirmative defenses. The answering defendants did not, as claimed by plaintiff, file an outright disclaimer. But they did say that they were once the owners of the real property, and that, through a chain of successive deeds, California Land Title Company had finally conveyed it to R. W. Brandes, Ruth E. Brandes, his wife, Edwin J. Regan and Julia B. Regan, his wife, and Fred H. Howell and Anne S. Howell, his wife, said deed having been recorded on the 13th day of October, 1965. In a separate defense, the answering defendants allege that California Land Title Company has issued a policy of title insurance to the above-named grantees, and that said California Land Title Company therefore has an interest in seeing that the title conveyed to the six persons so named remains in them. The answering defendants deny that they have no interest in the title.

The four affirmative defenses contained in the answer plead in detail facts which, if true and applicable, would defeat the interest of the plaintiff in the land; it is alleged that the plaintiff herein is relying for its claim of title upon the effect of a deed allegedly executed on or about the 8th day of June 1965, by one William M. Braunschweig, and his wife, Galena

Braunschweig; that no consideration was given for the deed, and that it was therefore void; that the deed in question was never legally delivered; that the consideration for the deed was illegal in that it consisted of an agreement to perform legal services by a person not a lawyer; that the plaintiff, even if it is apparently holding title, has no individual underlying right therein, but that it has title in trust for persons specified as Edna M. Barker, William F. Braunschweig, and Galena Braunschweig, and that said beneficiaries have instructed said plaintiff to desist in its efforts to prevail in the above action.

To include a detailed examination of the conflicting declarations, in our judgment, would be superfluous. It is sufficient to say that the major difference in the viewpoints of the parties, as developed by the opposing declarations, is, on the one hand, that the members of the Steinberg group are the owners of the land by reason of an unrecorded deed, and, on the other hand, that the six local purchasers are the owners of the realty because they acquired title by another deed from the former owners without knowledge or notice of the Steinberg interests. It is claimed on behalf of the respondents that the title of the plaintiff is not valid because of facts alleged in the declarations of the respondents, which oppose, sometimes questionably, the allegations contained in the complaint. And it is the position of appellant that the declarations of the devisees named in the second deed do not show by admissible evidence that all six were without knowledge, or at least notice, of the existence of the Steinberg unrecorded deed at the time their deed was delivered; in this connection, three of the six made affidavits that they took the deed in question without knowledge of any claim by the Steinberg group; however, the three wives did not file affidavits, and the Steinberg claimants argue that the hearsay statements of the three male purchasers are insufficient proof that the three wives knew nothing about the Steinberg deed at the time they received delivery of their own deed; in this connection, the appellant points to the requirement of the code section that the persons filing affidavits in support of an application for summary judgment must be able themselves to testify to the contents. (Code Civ. Proc., § 437c.)

It cannot be denied that the contending declarations bristle with factual questions.

The first duty of the judge in considering this motion for a

summary judgment was to inquire if there was a question of fact as to whether the named defendants had a right to defend the action and, hence, to move for a summary judgment. The appellant claims that the two named defendants, by their answer, filed a disclaimer, and that when defendants disclaim any right, title, or interest in the land as to which the title is sought to be quieted, they cannot possibly be granted a judgment in their favor, citing *Bulwer Consolidated Mining Co.* v. *Standard Consolidated Mining Co.*, 83 Cal. 589 [23 P. 1102]; *Federal Home Loan Bank* v. *Long Beach Fed. S. & Loan Assn.*, 122 F. Supp. 401, 422. They rely in part on logic and the section of the code which forbids a plaintiff in such circumstances from even taking a judgment for costs against a disclaiming party. (Code Civ. Proc., § 739.) However, the respondents say that they have not disclaimed, but that the validity of the series of deeds through which the six grantees claim to be owners of the land, is at stake, thus involving their relationship with such grantees, and that in any event the California Land Title Company has issued a policy of title insurance protecting the persons to whom, by a series of successive deeds, said answering defendants conveyed the property, namely, the six individual residents of Trinity County. It is at least arguable that when a corporation which has issued a policy of title insurance in favor of certain persons who hold a deed from such title insurance company, such company has in fact an interest in the land to the extent of at least seeing that the insured persons are successful in their claim that they are the owners; any adverse judgment, in litigation of this kind, would necessarily subject the issuer of a policy of title insurance to considerable potential damage for it appears in the record that the six persons paid over $60,000 for the land, and that they have in prospect a proposed resale for $80,000. At the very least, the quantum of interest of these defendants involves a question of fact, which must necessarily be decided other than by a summary judgment, and the court was wrong at the inception in refusing to permit the solution of the question by the usual trial procedure. Furthermore, if it should be determined that the title companies are, or that either of them is, a proper party, the declarations in the case show beyond question that there are multiple questions of fact which must necessarily be determined in the usual way, among them being (1) whether the plaintiff was indeed the holder of an effective deed to the

property from William F. Braunschweig and wife, (2) whether there had been delivery of such a deed, (3) whether there was anything basically illegal about the relationship between the plaintiff and Braunschweig, (4) whether, if the plaintiff holds title to the land, it holds it in trust only and the beneficiaries have properly instructed it to dismiss the suit, and (5) whether or not the six parties who purchased the land and who claim to own it as bona fide purchasers for value did in fact act without knowledge or notice that a valid deed was already outstanding. Thus, in such circumstances, the declarations adduced on the opposing sides, show that there are numerous factual questions which in the ultimate analysis must be tried in the usual manner, and not by the short cut of an implementation of the summary judgment technique.

The judgment is reversed.

Stone, J., and Gargano, J., concurred.